# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA MARTINEZ-LOPEZ,<br><br>                        Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS, III, et al.,<br><br>                        Respondents. | Case No.: 17cv2473 CAB (BLM)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

    On December 11, 2017, Petitioner Jessica Martinez-Lopez filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, requesting that the Court compel the Respondents to appear and show cause why she should not be immediately granted a bond hearing to determine whether she may be released from the custody of Immigration and Customs Enforcement ("ICE"). [Doc. No. 1.] On January 4, 2018, Respondent filed a return to the petition contending that the petition should be denied because Petitioner failed to exhaust administrative remedies. [Doc. No. 9.] On January 9, 2018, Petitioner filed a reply to the return. [Doc. No. 11.] For the reasons set forth below, the petition is **GRANTED.**

## BACKGROUND

    Jessica Martinez-Lopez is a 31-year-old native and citizen of Mexico. She first entered the United States in 1992 at the age of five, attended school for many years and

lived the majority of her life here. Ms. Martinez has never had any legal immigration status in the United States. [Doc. No 1 at 5, ¶15.]

In 2009, Ms. Martinez was arrested and placed in removal proceedings. [Doc. No. 1 at 20-22, Notice to Appear.] She applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on the basis of her sexual orientation. An immigration judge ("IJ") denied these applications, finding that the treatment of gays and lesbians in Mexico had changed significantly in recent years, and that Ms. Martinez could not show a clear probability of persecution in the future. [Doc. No. 1 at 5, ¶16.]

Ms. Martinez appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA agreed with the IJ and dismissed the appeal. [Doc. No. 1 at 23-27, BIA Decision dated 7/26/2010.] As a result, Ms. Martinez was removed to Mexico in August 2010. [Doc. No. 1 at 5, ¶17.]

On May 19, 2012, Ms. Martinez reentered the United States. She was apprehended and placed in reinstatement proceedings. [Doc. No. 1 at 28-29, Reinstatement Order.] But Ms. Martinez again expressed a fear of returning to Mexico on the basis of her sexual orientation, as well as her trans-gender status. An asylum officer found that she had a reasonable fear of persecution and referred her to an immigration judge. [Doc. No. 1 at 30-32, Notice of Referral to Immigration Judge.]

The IJ denied Ms. Martinez's application for withholding of removal and CAT relief. [Doc. No. 1 at 5, ¶19.] Ms. Martinez then appealed the IJ's order to the Board of Immigration Appeals ("BIA"), which again dismissed her appeal. [Doc. No. 1 at 33-38, BIA Decision dated 9/18/2014.] This time, however, Ms. Martinez appealed the BIA's decision to the Ninth Circuit Court of Appeals. [Doc. No. 1 at 6, ¶19.]

During briefing at the Ninth Circuit, the government moved to remand Ms. Martinez's case to the agency in light of the Ninth Circuit's decision in *Avendano-Hernandez v. Lynch,* 800 F.3d 1072 (9th Cir. 2015). [Doc. No. 1 at 6, ¶20.] In *Avendano-Hernandez,* the Ninth Circuit held that the BIA's reliance on new laws purporting to

protect the gay and lesbian community was a "conflation of transgender and gay identity," noting that "laws recognizing same sex marriage may do little to protect a transgender woman like Avendano-Hemandez from discrimination, police harassment, and violent attacks in daily life." 800 F.3d at 1080, 1082.

The Ninth Circuit granted the Government's motion to remand and sent Ms. Martinez's case back to the BIA. [Doc. No. 1 at 6, ¶21.] The BIA then remanded the case to the IJ. *Id.*

On remand, the IJ expressed confusion over the BIA's decision to remand, stating that it was unclear what exactly the BIA was tasking the IJ to do. [Doc. No. 1 at 39-44, Findings, Oral Decision, and Order of the IJ at 2, dated 1111/2017.] Although Ms. Martinez testified that she had contracted HIV since her previous asylum application was denied, the IJ found that this did not affect Ms. Martinez's eligibility for relief. *See id.* at 3-4. Accordingly, the IJ again denied Ms. Martinez's applications for withholding of removal and CAT on January 11, 2017. *See id.* at 4.

Ms. Martinez again appealed to the BIA. On August 22, 2017, the BIA remanded Martinez's case to the IJ with instructions to re-evaluate the claim in light of *Avendano-Hernandez,* as well as other recent Ninth Circuit precedent. [Doc. No. 1 at 45-48, BIA Decision dated 8/22/2017.]

Ms. Martinez was scheduled for a hearing in front of the IJ on January 9, 2018. [Doc. No. 9-1 at 51.][1]

From approximately May 2013 to April 2017, Ms. Martinez was released on an order of supervision and thus not detained in immigration custody. But in April 2017, Martinez pled guilty to California Penal Code section 415 (disturbing the peace). [Doc. No. 9-1 at 42-46.] Martinez was then transferred to ICE custody. [Doc. No. 9-1 at 47-49.]

---

[1] The parties have not informed the Court as to the outcome of that hearing.

In October 2017-after she had been detained for six months-Ms. Martinez requested a bond hearing before the IJ. [Doc. No. 1 at 7, ¶26.] The IJ denied Ms. Martinez's bond request, stating that the IJ lacked jurisdiction to set a bond. [Doc. No. 1 at 49, Order of the IJ With Respect to Custody, 10/19/2017.]

Ms. Martinez has now been held in immigration custody for approximately eight months. During this time, she continues to suffer from numerous health issues as a result of her HIV status. [Doc. No. 1 at 7, ¶27.]

Ms. Martinez's immigration case will not be resolved anytime in the near future. Even if the IJ were to render her a decision in her case on January 9, 2018, her case will continue at the BIA and the Ninth Circuit. In other words, in the absence of a bond determination, Ms. Martinez may remain detained in immigration custody for several months or years. [Doc. No. 1 at 7, ¶28.]

DISCUSSION

In general, once a noncitizen receives a final order of removal, the government has 90 days in which to physically deport her. 8 U.S.C. § 1231(a)(l)(A). These 90 days are known as the "removal period." *Id.* During this "removal period," the noncitizen is subject to mandatory detention. 8 U.S.C. § 123 l(a)(l )(C). But if the government does not physically deport the noncitizen during the 90 days of the removal period, the noncitizen is no longer subject to mandatory detention. *See* 8 U.S.C. § 123l(a)(6). In *Diouf v. Napolitano,* 634 F.3d 1081, 1086 (9th Cir. 2011)(*Diouf II*), the Ninth Circuit held that aliens facing prolonged detention under 8 U.S.C. §1231(a)(6) are entitled to a bond hearing.

Here, Petitioner contends, and Respondent does not dispute, that she is being held pursuant to Section 1231(a)(6). Respondent also does not dispute that Petitioner has been detained for over six months and is therefore eligible for a bond hearing under *Diouf II*. [*See* Doc. No. 9 at 5.] Rather, Respondent argues that the petition should be denied pursuant to the prudential exhaustion rule because Petitioner failed to appeal the denial of her bond hearing to the BIA. [Doc. No. 9 at 5-7.]

The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under §2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). Specifically, "courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). However, courts may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (*quoting SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Respondent argues that Petitioner failed to appeal her bond hearing denial to the BIA, and has failed to show that appeal to the BIA would be futile. Thus, argues Respondent, under the prudential exhaustion rule, her petition should be denied. [Doc. No. 9 at 5-7.]

It is undisputed that Petitioner did not appeal the latest denial of a bond hearing to the BIA. However, failure to appeal to the BIA is not necessarily fatal to Petitioner's claim. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017)(failure of petitioners to appeal IJ's determination of bond amount to BIA waived where several exceptions to the prudential exhaustion rule applied).

As Petitioner points out, several of the exceptions to the prudential exhaustion rule apply to Petitioner and weigh in favor of waiving the requirement. First, "an administrative record is not necessary to resolve . . . purely legal issues presented . . . " *Id.* at 989. Here, the sole legal question is whether the IJ had jurisdiction to grant a bond

hearing. As Petitioner has shown, and Respondent does not contest, Petitioner is eligible for a bond hearing under *Diouf II*.

Second, it appears that pursuit of administrative remedies would be a "futile gesture." *Laing v. Ashcroft,* 370 F.3d at 1000. While neither of the parties have found any post-*Diouf II* BIA decisions on this issue in the Ninth Circuit, Petitioner has cited to numerous district court decisions that have held that identically-situated noncitizens have a right to a bond hearing, and at least three where the petitions were initiated *after* the BIA denied the noncitizen's appeal of the denial of a bond hearing based upon lack of jurisdiction. [Doc. No. 11 at 4-5 (citations omitted).] For example, in *Bahena v. Aitken*, 2017 WL 2797802, at *1 (E.D. Cal. June 28, 2017), the petitioner was in a "post-removal" status and was being detained pursuant to 8 U.S.C. §1231(a)(6) while awaiting a hearing on his request to defer his removal under CAT. The petitioner filed a motion for custody redetermination contending he was entitled to bond while awaiting his hearing (as he had already been detained more than 6 months). The Immigration Judge denied his request for custody redetermination for lack of jurisdiction. The petitioner appealed the IJ's decision to the BIA and the appeal was denied. *Id.*

*See also Borjas-Calix v. Sessions*, 2017 WL 1491629, at *2 (D. Ariz. Apr. 26, 2017)(stating that the BIA "issued its decision finding that Plaintiff was not eligible for a custody redetermination hearing"); *Lopez v. Napolitano*, 2014 WL 1091336, at *2 (E.D. Cal. Mar. 18, 2014)("Petitioner appealed the denial of the bond hearing to the Board of Immigration Appeals, and on August 1, 2012, the Board denied the appeal, agreeing with the reasoning of the Immigration Judge that reinstatement aliens are ineligible for bond hearings."). Given there have been at least three post-*Diouf II* cases where the BIA affirmed the denial of a bond hearing (based on lack of jurisdiction) in a post-removal case, exhaustion of administrative remedies would be futile.

Finally, requiring Petitioner to exhaust administrative remedies may lead to irreparable harm. Petitioner states, and Respondent does not dispute, that she is HIV positive and frequently receives inadequate medical care at the detention center, which

could have long-term effects on her medical condition and could be exacerbated if she were required to wait an additional six months to appeal her bond denial to the BIA. *See Villalta v. Sessions,* 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017)("The Court agrees that Petitioner may suffer irreparable harm if unable to secure immediate judicial consideration of his claim.")(quotations omitted). Therefore, exhaustion of administrative remedies is waived, and Petitioner is entitled to a bond hearing.

## CONCLUSION

For the reasons set forth above, the Court finds the Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED**:

1. Within 14 days of this order, Respondents must provide Petitioner a hearing before an IJ in which the government bears the burden to demonstrate that Petitioner is either a flight risk or a danger to society;

2. If the government fails to show that Petitioner poses either a danger or a flight risk, the IJ shall set a reasonable bond for Petitioner's release pending the conclusion of her withholding of removal and CAT case.

**IT IS SO ORDERED.**[2]

Dated: January 19, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[2] Petitioner's renewed motion for appointment of counsel [Doc. No. 13] is **DENIED AS MOOT**. However, the Court is concerned that the previous orders that were mailed to Petitioner were returned as undeliverable. [Doc. No. 7, 8 and 10.] Therefore, the **CLERK OF THE COURT** shall electronically deliver a copy of this order to Kara Hartzler, Esq., at kara_hartzler@fd.org, in addition to mailing a copy to the Petitioner.